UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **JOY SHORT,** *as Administratix of the Estate of Christopher Short, et al.,* ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| v. ) ) | NO. 5:19-CV-471-MAS |
| **MARVIN KELLER TRUCKING, INC, et al.,** ) ) ) ) | |
| **Defendants.** | |

**MEMORANDUM OPINION & ORDER**

This negligence action arose from a fatal traffic collision on Interstate 64. Defendant John Walls ("Walls") lost control of his tractor trailer, owned and operated by Defendant Marvin Keller Trucking, Inc. ("Keller Trucking"), causing it to cross over the median and strike Christopher Short ("Short"). Short did not survive the collision.

Joy Short, as Administratix of the Estate of Christopher Short ("Estate"), asserted claims sounding in negligence and negligence per se against Short and Keller Trucking ("Defendants"). The Estate also asserted claims of negligent hiring, retention, supervision, and training against Keller Trucking. Finally, Joy Short and her two minor sons asserted claims of spousal and parental consortium, respectively, against Defendants. Defendants have filed motions for summary judgment seeking dismissal of the Estate's claims against Defendants. Additionally, Defendants seek to prohibit the Estate from seeking pain and suffering as part of its negligence-based claims. As the motions are fully briefed, the Court addresses the dispositive motions below.

1

## I. FACTUAL BACKGROUND

On March 13, 2019, Short was operating a pick-up truck on behalf of Kentucky Utilities and traveling westbound on Interstate 64 in Bath County, Kentucky. [Docket Entry ("DE") 48-1, Page ID# 206-210 (Kentucky Uniform Polic Traffic Collision Report)]. Walls, operating a tractor trailer on behalf of Keller Trucking, was travelling eastbound. [*Id.*]. Walls, for reasons heavily disputed and detailed below, lost control of his tractor trailer and crossed the median of Interstate 64 as Short's truck approached at a high speed in the opposite direction. [*Id.*]. Short saw the tractor trailer approaching, applied the brakes, and attempted evasive maneuvers. [*Id.*]. These efforts were unsuccessful as the tractor trailer impacted the truck nearly head on with the front of the tractor trailer impacting the front left bumper of Short's truck. [DE 48-1, Page ID# 206-210 (Kentucky Uniform Polic Traffic Collision Report)]. Short died immediately upon impact. [DE 57, Page ID# 1355]. Short's truck came to rest at the base of tree on the west side of the interstate while the tractor trailer turned on its side further back. [*Id.*]. Short was pronounced dead on the scene while Walls was transported to the local hospital for treatment of his injuries. [*Id.*].

## II. ANALYSIS

### A. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014). A genuine dispute over issues of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The key question is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52; *see also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 323). If that burden is met, the nonmoving party must then present sufficient evidence from which a jury could find for it. *Harrison*, 539 F.3d at 516 (citing *Anderson*, 477 U.S. at 252). In doing so, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In general, at the summary judgment stage the Court views all facts and inferences drawn from the evidence "in the light most favorable to the nonmoving party." *Black v. Pension Ben. Guar. Corp.*, 983 F.3d 858, 862 (6th Cir. 2020) (citing *Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019)).

**B.    SUMMARY JUDGMENT IS NOT APPROPRIATE ON THE ESTATE'S CLAIM OF NEGLIGENCE.**

To prevail on a negligence claim under Kentucky law, the plaintiff must prove that the defendant: 1) owed the plaintiff a duty of care; 2) the defendant breached the standard of care by which his or her duty is measured; and 3) that the breach was the legal causation of the consequent injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003); *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). The element of duty is a question of law for the court to decide, breach and injury are questions of fact for the jury to decide, and causation is a mixed question of law and fact. *Pathways, Inc.*, 113 S.W.3d at 89 (citing *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980)). To prevail on their motion for summary judgment, therefore, Defendants must establish that there is a complete "absence of evidence," that Walls owed a duty

3

to Short, that Walls breached that duty, and that his breach was a substantial cause of the accident.[1] *Celotex Corp.*, 477 U.S. at 323–25. If, however, there is any genuine dispute as to any material fact concerning the elements of duty, breach, and causation, such that a reasonable jury could find that Walls was negligent, the Court cannot grant summary judgment to the movants. *Anderson*, 477 U.S. at 249.

### 1. *The Estate's Theory of Causation*

According to the Estate, the accident in question occurred because Walls was knowingly ill and/or fell asleep and lost control of the tractor trailer. Specifically, in the weeks prior to the accident, Walls was treated for acute bronchitis, including symptoms such as coughing, shortness of breath, and fatigue. [DE 55, Page ID# 676-77]. Moreover, Walls long suffered from chronic fatigue. [*Id*. at Page ID# 679]. On the date of the accident, Walls initially only drove forty miles before stopping for a nap to rest. [*Id*.]. He then drove for forty-five additional minutes before stopping for another rest break. [*Id*. at Page ID# 680]. In-cab video shows show Wall swerving out of the travel lane only seconds prior to the accident. [*Id*. at Page ID# 681]. Following the accident, Walls originally told first responders that he "fell asleep." [*Id*. at Page ID# 680]. He later told representative of Keller Trucking that he lost consciousness after using his inhaler and coughing. [*Id*.]. Regardless, the Estate relies upon these various facts and expert opinions to contest summary judgment.

### 2. *Defendants' Theory of Causation*

Defendants do not, as part of the limited motion practice, contest some of the facts set forth by the Estate. Rather, Defendants contend that Walls lost consciousness due to a cough syncope.

---

[1] Defendants' motion for summary judgment focuses solely on the issue of causation. The parties do not address nor does the Court make any finding on the issues of breach, duty, or damages based upon the motion practice before the Court.

4

Per Defendants, a cough syncope "is defined as a temporary loss of consciousness that occurs while coughing with spontaneous return to baseline function." [DE 52, Page ID# 631 n. 3]. The cough was caused, per Walls, when he took a dose from his Albuterol inhaler, prescribed to him based upon a recent diagnosis of bronchitis. [*Id*. at Page ID# 632]. Such a rare and unprecedented event, Defendants argue, was not foreseeable. Based upon these facts, the Defendants contend summary judgment is appropriate.

### 3. *Battle of Causation*

The parties, without question, come armed to battle over the true cause and foreseeability of the accident and, thus, the negligence of Defendants, if any. Both have submitted extensive and detailed primary evidence as well as the opinions of experts in support of their respective positions. Having considered the evidence presented, Defendants have not met their burden of showing that summary judgment on the claim of negligence is proper. Viewing all the facts and inferences drawn from the evidence in the light most favorable to the nonmovant, the Estate has raised a genuine issue of material fact regarding, at a minimum, the cause or foreseeability of the accident. Specifically, a reasonable juror could find that Walls, and consequently Keller Trucking, could have reasonably foreseen his loss of consciousness due to his acute illness at the time of the accident and chronic fatigue, noting that Walls admitted he fell asleep in the moments following the accident. Although Defendants disagree and have experts to discuss their theory of causation, such conflicting testimony and theories "present[] a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52.

Accordingly, it is the opinion of this Court that the Estate has demonstrated a genuine issue of material fact for the jury as to the negligence of Defendants.

**C.   DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CLAIMS OF NEGLIGENCE PER SE IS WARRANTED.**

The negligence per se doctrine has been codified in Ky. Rev. Stat. Ann. ("KRS") § 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *See also Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014) (characterizing the negligence per se statute as "creat[ing] a private right of action under which a damaged party may sue for a violation of a statutory standard of care"). Defendants next argue that several facets of the Estate's negligence per se claims should be dismissed for various technical and substantive failings. As detailed below, the Court agrees.

   *1.   The Complaint Does Not Include Claims for Violations of the Illinois Commercial Driver's License Manual.*

Defendants initially move for summary judgment on allegations in the Estate's liability expert's report that Walls violated § 2.23.4 of the Illinois Commercial Driver's License Manual ("CDLM"). The Estate's Complaint does not assert a claim for negligence per se under § 2.23.4 of the Illinois CDLM. The Court, "draw[ing] on its judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), finds that the Complaint does not provide a "short and plain statement" of a claim for negligence per se under Illinois's CDLM as required by Rule 8(a)(2). Stated another way, a defendant reviewing this Complaint would not be on notice of a negligence per se claim, and an opinion in an expert's report does not suddenly materialize such a claim. Thus, the Court will deny summary judgment on this claim as moot.[2]

---

[2] The Court notes that the deadline to amend pleadings in this case expired for both parties more than a year ago.

### 2. *Kentucky's Negligence Per Se Statute Does Not Apply to Federal Statutes.*[3]

Defendants contend that Kentucky's negligence per se statute does not extend to the Estate's claims pursuant to the Federal Motor Carrier Safety Regulations ("FMCSR"). 49 CFR § 392.3. Defendants are correct.

Although KRS § 446.070's "any statute" language is quite broad, Kentucky courts have limited its application to Kentucky statutes, reasoning that the General Assembly did not intend for KRS § 446.070 to "embrace the whole of federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations." *T & M Jewelry v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006). Accordingly, courts across the Commonwealth have rejected negligence per se claims based on violations of federal statutes. *See Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008) (rejecting plaintiff's argument that KRS § 446.070 creates a state cause of action for HIPAA violations); *Vanhook*, 67 F. Supp. at 817-18 (finding that the violation of federal statutes under the Social Security Act was beyond the scope of KRS § 446.070, regardless of the substantial overlap between federal and state regulatory schemes in that context); *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799 (W.D. Ky. 2013) (prohibiting the plaintiff from basing his negligence per se claim on Mine Safety and Health Administration violations).

The Estate's claims under the FMCSR (specifically, 49 CFR § 392.3) are not permitted under KRS § 446.070. And while the Estate counters that the FMCSR were incorporated generally into Kentucky law via KRS § 281.600(1), courts have consistently held that such broad and vague adoption does not create a state law claim for negligence per se given the vast and technical nature of the FMCSR. *Infinite Energy, Inc. v. Henson*, No. 2016-CA-518, 2019 WL 2246607 (Ky. Ct. App. May 24, 2019) (rejecting a negligence per se claim asserted under FMCSR); *Tassin v. BNK*

---

[3] Alternatively, the Estate's claims under § 2.23.4 of the Illinois CDLM would equally and correctly be dismissed under this same rationale.

*Trasnport, Inc.*, No. 3:19-cv-64-JHM, 2019 WL 2271163 at *2 (W.D. Ky. May 28, 2019) (dismissing negligence per se claim under FMCSR as outside Kentucky's negligence per se statute).

Accordingly, to the extent that the Estate alleges a negligence per se claim based on a violation of federal law, the claim fails as a matter of law and must be dismissed.

### 3. *The Record Does Not Support that Keller Trucking Made "Knowing" Violations of KRS 189.224.*

KRS § 189.224 provides that "[i]t is unlawful for the owner, or any other person, employing or otherwise directing the operator of any vehicle, to require or **knowingly** to permit the operation of such vehicle upon a highway in any manner contrary to law." (Emphasis added).

The key word is "knowingly." Construed according to ordinary principles of statutory interpretation, the word "knowingly" applies to the entire object of the transitive verb, "to permit." *See Flores–Figueroa v. United States*, 556 U.S. 646, 650–53 (2009) (explaining how to construe statutes containing "knowingly" according to ordinary usage and statutory interpretation principles). Consequently, the Estate must provide facts that Keller Trucking *knew* that Walls was operating and/or driving the tractor trailer in some manner contrary to law. Yet, the Estate has made no such allegation in its Complaint or in the record before the Court. In fact, the Estate has gone out of its way to establish a narrative that Keller Trucking was negligent, not intentional, in failing to investigate and discover Walls' medical ailments. By the Estate's own narrative, Keller Trucking was negligent because it lacked knowledge as opposed to acting intentional based upon that knowledge. Accordingly, the Estate's negligence per se claim fails as alleged under KRS § 189.224.

### 4. *The Estate Does Not Contest Dismissal of Claims Under KRS § 189.390*

In its Complaint, the Estate asserted a claim for negligence per se under KRS § 189.390 suggesting that Walls was speeding at the time of the accident. Neither expert in reconstructing the accident has cited speeding as even a de minimis factor in the accident. The Estate, while responding to several arguments raised in Defendants' efforts to defeat the above negligence per se arguments, did not address this specific claim. Thus, finding no material dispute of fact, the Court will dismiss the Estate's claim for negligence per se under KRS § 189.390.

D. **THE ESTATE CANNOT ESTABLISH A CAUSAL NEXUS NECESSARY FOR ITS CLAIMS OF NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING.**

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n. 10 (Ky. 2014). These claims "focus on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009). The elements of the torts of negligent hiring and retention are distinguishable from the elements of negligent supervision and training,[4] however, both torts require that the employer's failure to exercise ordinary care in managing an employee creates a

---

[4] Negligent hiring and retention, however, differs from negligent training and supervision. To prevail on a claim for negligent hiring and retention, the plaintiff must prove that: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed; and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff. *Oakley v. Flor-shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998). "Similarly, an employer may be held liable for negligent supervision if he or she knew or had reason to know of the risk that the employment created." *Smith v. Norton Hospitals, Inc.*, 488 S.W.3d 23, 32 (Ky. Ct. App. 2016). To succeed on a claim for negligent training and supervision, the plaintiff must establish that (1) the employer knew or had reason to know of the risk that the employee created; (2) the employee injured the plaintiff; and (3) the hiring, supervision and/or retention of the employee proximately caused the injury. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005)(quoting 27 AM.JUR.2d *Employment Relationship* § 401 (2004)). Because the Court's finding hinges upon causal nexus or foreseeability as to both torts, the Court will not make any distinguishments between the torts.

foreseeable risk of harm to the plaintiff. *Oakley v. Flor-shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998). *See also*, *Grand Aerie*, 169 S.W.3d at 844; *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003); *Taylor v. JPMorgan Chase Bank, N.A.*, 13-cv-24, 2014 WL 66513, at *3 (E.D. Ky. Jan. 8, 2014) (explaining that negligent hiring or retention and negligent supervision claims both require "some foreseeability or awareness on the part of the employer that the employee created the risk at issue"). In other words, the Estate must establish a causal nexus between a company's negligence and the risk of harm to the plaintiff. *See Brooks*, 283 S.W.3d at 731 (incorporating the issue of causation into the proposed jury instruction for negligent hiring and retention); *M.T. v. Saum*, 3 F. Supp. 3d 617, 630 (W.D. Ky. 2014) (examining the causal relationship with the alleged prior behavior of the employee and the resulting harm).

Per the Estate, Keller Trucking should have terminated Walls prior to the accident based upon two broad categories of information: (1) Walls' driving records and (2) Walls' health history. The Court will address each in turn.

### 1.   *Walls' Driving Record*

First, the Estate highlights Walls' driving record. Notably, Walls received two citations during his tenure with Keller Trucking for "hard braking" events due to distracted driving. Specifically, in September 2017, Walls was cited by Keller Trucking for using his cellphone while driving resulting in hard braking. [DE 56, Page ID# 1099]. Keller Trucking required Walls to attend a course on distracted driving. [*Id*.]. Almost a year later, in August 2018, Walls was once against cited for distracted driving. [*Id*.]. The Estate attempts to frame this as another cellphone violation and that Keller Trucking's internal policy required it to terminate Walls' upon a second such violation. The deposition testimony, however, is vague as to the cause of the second hard braking event and in no way supports the notion that the policy of Keller Trucking required termination. [DE 56-4, Deposition Testimony of A. McKee, pp. 47-52 (stating that she could not

affirm cellphone usage caused the braking event and that termination was an option among many other the company had to bring a driver's performance into compliance)]. Regardless, there is no dispute that Keller Trucking cited Walls twice for hard braking events.

Despite this blemish on Walls' record, there is no evidence whatsoever that the result of the accident here was caused by Wall being distracted by a cellphone or anything else. Again, as detailed above, the Estate's theory is Walls fell asleep causing the accident while Defendants counter that Walls lost consciousness due to a cough syncope. Regardless of which theory proves right, nobody has suggested that Walls was distracted. There is nothing in the record to suggest that Keller Trucking should have foreseen that Walls prior two distractions incidents, both of which were addressed by the company, would have led to the current accident. *Stabolsky v. Belew*, 205 F.3d 890 (6th Cir. 2000) (discussing how a truck driver's criminal history was not foreseeable to trucking company when the plaintiff was injured as a hitchhiker) (applying Kentucky law).

Moreover, the Estate admits that Walls had a valid commercial driver's license for twelve years prior to the accident. [DE 50, Page ID# 262]. He also possessed a valid Department of Transportation medical examination effective at the time of the accident. [*Id.*]. Walls had likewise cleared a background check. [*Id.* at Page ID# 259]. In other words, Walls was fully compliant with all regulations from the Federal Motor Carrier Safety Administration. The record, if anything, suggests that Keller Trucking had no knowledge prior to the accident that Walls was anything other than a qualified and compliant driver.

An illustrative case to the current matter is *Gordon v. Turner*, No. 1:13-cv-136-DLB, 2016 WL 3636073 (E.D. Ky. June 29, 2016). There, a tractor trailer driver struck the rear of plaintiff's vehicle on an interstate off-ramp. Plaintiff, Tiffany Gordon, argued the employer of the tractor

trailer driver, Trillium, should not have retained the tractor trailer driver, Tenorris Turner, based upon his driving record. The Court disagreed.

> Gordon next contends that Trillium had notice of Turner's failings because his driving record revealed a misdemeanor for exceeding maximum load, two speeding tickets, and two accidents involving stationary objects, one of which was DOT-recordable. Despite these blemishes on Turner's MVR, the record reflects that was still eligible for hire under federal regulations and Trillium's hiring standards. Trillium also complied with the federal regulations requiring it to obtain copies of Turner's CDL, MVR, and DAC. While this is not conclusive evidence of due care, **courts have generally been unwilling to find that there were genuine issues of material fact as to negligent hiring and retention, so long as the employer complied with the hiring practices prescribed by the Federal Motor Carrier Safety Administration**. *See Saum*, 3 F. Supp. 3d at 629 (finding that there was not a genuine issue of material fact as to negligent hiring and retention because the employer obtained a FMCSA screening report, which indicated that the employee was qualified to operate a commercial vehicle); *Carberry* [*v. Golden Hawk Transp. Co.*], 402 S.W.3d [556,] 563 [(Ky. Ct. App. 2013]) (reaching the same conclusion based on the fact that the employer complied with all federal motor vehicle regulations before hiring the employee).

Id. at *10 (internal citations to the record omitted; emphasis added).

Accordingly, like the courts in *Gordon*, *Saum*, and *Carberry*, the Court finds summary judgment is appropriate based upon these grounds.

### 2. *Walls' Health Concerns*

Second, the Estate emphasizes Walls overall health problems. Namely, the parties agree that Walls was diagnosed with chronic fatigue some time prior to the accident at issue. [DE 55, Page ID# 679]. Moreover, in the days just prior to the accident, Walls saw his treating physician for a troubling cough and eye irritation. [*Id*. at Page ID# 676-77]. Walls was diagnosed with bronchitis and was provided an Albuterol inhaler as treatment, something Walls' physician had previously prescribed to him for his long standing lung-based health problems. [DE 52, Page ID# 632]. Based upon these facts, the Estate maintains Keller Trucking was negligent to permit Walls to operate the tractor trailer.

The Estate's arguments on these points, while certainly more relevant than distracted driving, do not hold up upon further examination. As to the issue of chronic fatigue, Wall was diagnosed with the general condition "long before this wreck." [DE 58, Page ID# 58]. And yet, again, Walls had a valid commercial driver's license [DE 50, Page ID# 262], possessed a valid Department of Transportation medical examination effective at the time of the accident [*Id*.], and had cleared a background check [*Id*. at Page ID# 259]. In other words, Walls was fully compliant with all regulations from the Federal Motor Carrier Safety Administration for years without issue all while managing his chronic fatigue. Moreover, the Estate's own liability expert, Joey Stidham ("Stidham"), testified that there was no evidence to support the argument that Keller Trucking knew or should have known Walls was chronically fatigued rendering Walls unfit to operate the tractor trailer. [DE 61-3, Page ID# 2038]. Similarly, the Estate's medical expert, Dr. Frank Vannier, testified that there was no evidence to support the argument that Walls drove when fatigued or operated beyond his hours-of-service requirements as strictly monitored under federal regulations. [DE 61, Page ID #1711 (citing the deposition transcript of Dr. Vannier, pp. 52-53)]. According to the Estate's own experts, there is simply no evidence to suggest Keller Trucking knew or should have known about Walls' chronic fatigue or any potential impact on his driving.

Turning to the bronchitis diagnosis, the Estate falters here as well. The record demonstrates that Walls had a history of lung issues, such as bronchitis, that were correctly treated using an inhaler without prior incident. [DE 56-5, Page ID# 1274-76]. And yet, once more, Walls had a valid commercial driver's license [DE 50, Page ID# 262], possessed a valid Department of Transportation medical examination effective at the time of the accident [*Id*.], and had cleared a background check [*Id*. at Page ID# 259]. Walls remained fully compliant with all regulations from the Federal Motor Carrier Safety Administration in spite of his lung issues. Stidham agreed that

Keller Trucking was right to rely upon such compliance and acknowledged that Walls' treating physician did not place any work restrictions on Walls. [DE 61-3, Page ID# 2035-36]. In other words, prior to the accident, there was nothing to suggest that Walls' history of lung issues, such as bronchitis, would "likely interfere with [his] ability to control and drive a commercial motor vehicle safely." 49 CFR 391.41(b)(5).

The Estate attempts to inject the medical issue of Walls' sleep apnea, something that was diagnosed after the accident. "Walls was on notice of the possibility of sleep apnea nearly three years before the wreck, as the result of an April 30, 2016 emergency room visit." [DE 56, Page ID# 1098]. The cited medical record, however, does not support this statement. Rather, the medical record simply states that Walls was in the emergency room on that date for "cough/congestion". [DE 56-9, Page ID# 1349]. The Court has no basis or ability, from that, to leap to the conclusion that Walls should have known of his sleep apnea diagnosis prior to the accident. Similarly, while Walls was treated multiple times in the decade prior to the accident for "fatigue and malaise" as part of his chronic fatigue [DE 56, Page ID# 1098], there is no suggestion that the chronic fatigue diagnosis from qualified medical practitioners should have placed Walls on notice that he was actually suffering from a different, more serious medical condition undiagnosed by those qualified medical practitioners. In fact, in a familiar pattern at this point, the Estate's expert agrees as much. [DE 60, Page ID# 1712]. And even if the Court were to set aside all of the conclusory leaps made by the Estate and believe Walls somehow was able to self-diagnose himself prior the accident, there are no facts before the Court that would even suggest to a jury that Keller Trucking knew or had reason to know of Walls' yet undiagnosed sleep apnea.

For these reasons, summary judgment is appropriate on the issues of negligent hiring, retention, supervision, and training.

E.   **THE ESTATE MAY PURSUE DAMAGES FOR PAIN AND SUFFERING.**

Generally, Kentucky law permits a party to recover pain and suffering "where there is substantial evidence establishing that pain and suffering actually occurred." *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 61 (Ky. Ct. App. 1999). However, "pain and suffering would not be a proper element of damages if [an injured party] was unconscious from the time of the [injuries] until [his] death." *Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000). Here, the parties agree that Short died immediately upon impact. [DE 57, Page ID# 1355]. The Estate, however, bases its claim for pain and suffering on the seconds just prior to the accident. Thus, the remaining issue is whether the Estate is entitled to damages for pain and suffering for Short's pre-impact fear.

In *Osborne v. Keeney*, the Kentucky Supreme announced that a plaintiff could pursue claims for emotional pain and suffering if the party could establish: (1) a common law negligence claim; (2) a serious or severe emotional injury; and (3) provide expert proof in support of the emotional harm. 399 S.W.3d 1, at 18 (Ky. 2012). Five years later, in *Indiana Ins. Co. v. Demetre*, the Supreme Court revisited the third requirement of expert proof. 527 S.W.3d 12, 35 (Ky. 2017). There, the requirement of expert proof was "limited to claims of intentional infliction of emotional distress or negligent infliction of emotional distress." *Id*. at 39. The court explained:

> Our conclusion is due in part to the recognition that claims for emotional damages grounded in breach of contract or violation of statute, such as those alleged by Demetre in the case at bar, are less likely to be fraudulent than those advanced under a free-standing claim of intentional or negligent infliction of emotional distress. To evaluate whether emotional damages are appropriate in those cases that do not allege the free-standing torts of intentional or negligent infliction of emotional distress, we have historically relied on our trial courts and the jury system to evaluate the evidence and determine the merits of the alleged claims ... . We see no compelling reason to depart from this view.

*Id*. (internal citations omitted). "In other words, *Osborne's* heightened expert testimony standard applies only where a plaintiff asserts a free-standing negligent (or intentional) infliction of emotional distress claim and not a different cause of action through which a plaintiff alleges

15

emotional damages." *Cutter v. Ethicon, Inc.*, No. 5:19-cv-443-DCR, 2020 WL 4740472 at *2 (E.D. Ky. Aug. 14, 2020) (reversed on other grounds).

Despite *Osborne*, *Demetre*, and other cases like *Cutter* all plainly referencing emotional distress damages as being available for common law negligence claims, Defendants suggest that "pre-impact" damages are only available to the Estate under a theory of negligence infliction of emotional distress. [DE 59, Page ID# 5-10]. Defendants go to great strides to construct legal support for this argument by blending disparate portions of *Osborne* and *Demetre* (while ignoring the sections discussing common law negligence claims) and attempt to resurrect other parts of *Steel Technologies v. Congleton*, 234 S.W.3d 920 (Ky. 2007), the case *Osborne* overturned. [*Id.*]. Defendants only alleged support for this theory is *Hengel v. Buffalo Wild Wings, Inc.*, 2013 WL 3970154 (E.D. Ky. July 31, 2013). But *Hengel* was pre-*Demetre* when courts did not distinguish between a claim for common law negligence and negligent infliction of emotional distress for the purpose of pre-impact pain and suffering. The *Hengel* court addressed the pre-impact claim for pain and suffering in a single sentence: "To the extent that Plaintiffs seek to recover for any pre-impact suffering or anguish, the lack of expert testimony or other scientific proof prevents any possible claim." *Id.* at * 3 (citing *Osborne*). The Court did not preclude pre-impact damages, but merely reaffirmed the requirement of proof for all pre-impact claims post-*Osborne* but pre-*Demetre*. The Court did not, as Defendants suggest, somehow require pre-impact claims be made only through a separate claim of negligent infliction of emotional distress.

In fact, the entire evidentiary distinction later drawn by *Demetre* distinguished between claims sounding in general negligence and specific claims sounding in negligent intentional infliction of emotional distress. Stated another way, "[w]hen emotional damages are a 'parasitic' consequence of negligent conduct that results in multiple types of damages, there is no need to

16

impose special pleading or proof requirements that apply to 'stand-alone' emotional distress claims." *Demetre*, 527 S.W.3d at 38 (quoting *Amos v. Vanderbilt Univ.*, 62 S.W.3d 133 (Tenn. 2001)). *See also Louisville SW Hotel, LLC v. Lindsey*, 2019 WL 2147355 (Ky. Ct. App. May 17, 2019) (upholding pain and suffering on a common law negligence claim for a drowning victim for the fear experienced in the seconds prior to drowning) (citing David W. Leebron, FINAL MOMENTS: DAMAGES FOR PAIN AND SUFFERING PRIOR TO DEATH, 64 N.Y.U. L. Rev. 256, 262 (1989), which discusses that permitting pain and suffering damages for pre-injury fear is the majority approach)). The Estate has asserted a claim sounding in common law negligence seeking pain and suffering for pre-impact fear that is parasitic to that common law claim. The Court concludes, under Kentucky law, that such a claim of pain and suffering is permissible.

Turning back to the three elements set forth in *Osborne*, there is no dispute regarding the first two elements. First, the Estate has unquestionably asserted claims against Defendants sounding in common law negligence. [DE 1]. The Estate also clearly alleges claims for pain and suffering, on behalf of Short, generally as part of its prayer for relief. [*Id*.]. Second, there is also no dispute the injury was "severe or serious" as contemplated by *Osborne*. The *Osborne* court stated that an emotional injury is sufficiently severe or serious only if it "significantly affects the plaintiff's everyday life or require[s] significant treatment." *Osborne*, 399 S.W.3d at 17. Defendants do not address this requirement presumably because there is little dispute considering the facts.

Defendants' other efforts center on the third requirement, the proof necessary to establish an award for pain and suffering. As set forth in *Demetre*, a plaintiff's proof must "be clear and satisfactory ... [E]vidence based on conjecture will not support a recovery for such damages." The jury must be able to "infer that anxiety or mental anguish in fact occurred." *Motorists Mut. Ins.*

17

*Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997) (quoted at length as the relevant standard in *Demetre*). The Court is therefore left to decide whether the Estate has marshaled enough evidence to possibly show at trial that Short suffered emotional injuries to a "clear and satisfactory" degree. Again, the parties are not in dispute.

> The evidence is undisputed that Short saw the tractor-trailer barreling at him for at least 3 to 3.5 seconds before impact. Plaintiffs' accident reconstruction expert, Joey Stidham, explains that the evidence from the Restraint Control Module in Short's truck shows that "Short attempted to take evasive action prior to the collision." Short first "let off the accelerator and began to brake" and then "steered to the right and then to the left in an apparent effort to avoid the collision." Accordingly, Stidham opines that "approximately 3.5 to 3.0 seconds before this collision Mr. Short detected the collision was going to occur." Defendants' accident reconstructionist, Brent Slone, agrees with Stidham that Short saw and appreciated the tractor-trailer coming at him as shown by the fact that Short applied his brakes.

[DE 57, Page ID# 1354 (internal citations omitted)]. While Defendant may question the strength or quality of this evidence, that question is not appropriate at the summary judgment stage.

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1. Defendants Walls and Keller Trucking's Motion for Partial Summary Judgment as to Claims of Negligence Per Se [DE 48] is **GRANTED IN PART** as to the alleged violations of the following statutes: (1) 49 CFR § 350-399; (2) KRS § 189.224; and (3) KRS § 189.390.

2. Defendants Walls and Keller Trucking's Motion for Partial Summary Judgment as to Claims of Negligence Per Se [DE 48] is **DENIED AS MOOT** as to § 2.23.4 of the Illinois CDL for the reasons stated herein. The Estate's remaining claims for negligence per se persist, as those claims were not included in Defendants' motion.

3. Defendants Walls and Keller Trucking's Motion for Partial Summary Judgment as to Claim of Pain and Suffering by the Decedent [DE 49] is **DENIED**.

4. Defendants Walls and Keller Trucking's Motion for Partial Summary Judgment as to the Plaintiffs' Claims of Negligent Hiring, Retention, Training, and Supervision [DE 50] be, and is, here **GRANTED IN FULL**. Summary judgment is therefore entered in Defendants' favor as to the Estate's claims of negligent hiring, retention, training, and supervision.

5. Defendants Walls and Keller Trucking's Corrected Motion for Summary Judgment as to Plaintiffs' Claims of Negligence [DE 52] be, and is, hereby **DENIED**. Defendants originally filed the same motion at DE 51 prior to filing a corrected version. For purposes of clarity in the record, DE 51 is **DENIED AS MOOT**.

Entered this 4th day of October, 2021.

Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge