**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **JOY SHORT,** *as Administratix of the* *Estate of Christopher Short, et al.*, | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | NO. 5:19-CV-471-MAS |
| **MARVIN KELLER TRUCKING, INC, et al.,** | ) ) ) ) ) | |
| **Defendants.** | | |

**MEMORANDUM OPINION & ORDER**

With trial fast approaching, Plaintiffs and Defendants have filed motions in limine addressing numerous evidentiary issues in the case. The motions are ripe, and the Court addresses their various arguments below.

## I.    BACKGROUND

This negligence action arose from a fatal traffic collision on Interstate 64. Defendant John Walls ("Walls") lost control of his tractor trailer, owned and operated by Defendant Marvin Keller Trucking, Inc. ("Keller Trucking"), causing it to cross over the median and strike Christopher Short ("Short") head on. Short did not survive the collision. His survivors, both individually and through his estate ("Plaintiffs"), have filed this action against Walls and Keller Trucking ("Defendants"). Additional factual background and the various legal theories of the parties are set forth in the Court's prior Memorandum Opinion & Order addressing summary judgment motion practice. [DE 77].

## II.   ANALYSIS

### A.   REFERENCES TO ISSACS & ISSACS DURING VOIR DIRE

Plaintiffs first seek an in limine instruction prohibiting any voir dire questioning regarding their law firm as well as its marketing and advertising.  [DE 64].  Defendants respond that their intent during voir dire is merely to inquire whether any potential juror has been represented by counsel for Plaintiffs or its law firm.  Defendants do not wish to question potential jurors on any issues about the law firm's marketing and advertising.

"An adequate voir dire to identify unqualified jurors is integral to the right to trial by an impartial jury."  *Allen v. Mitchell*, 953 F.3d 858, 866 (6th Cir. 2020).  To accomplish such a feat, the Court must inquire if any potential juror has ever been represented by counsel of record or their law firm.  *See Brooks v. Caterpillar Global Mining America, LLC*, No. 4:14-cv-22-JHM, 2017 WL 3401476 (W.D. Ky. Aug. 8, 2017) (excluding references during voir dire to a firm's hourly rates, size of the firm, etc., but requiring the identity of "the attorneys, their law firms, and the location of the law firms in voir dire to determine whether the jurors personally know the attorneys or other members of the firm").

The Court agrees with Defendants' limited approach as set forth in *Brooks*.  As the Court will conduct voir dire on this and other standard voir dire topics, the Court will limit its to questions to the issue of whether any potential juror has been represented, sued, or employed by Isaacs and Isaacs or Plaintiffs' specific counsel.  No additional questions concerning this topic will be permitted during questioning of the jury panel by counsel.

### B.   NEGLIGENCE OF SHORT

Plaintiffs next seek to exclude any reference or suggestions that Short was partially responsible for the accident.  [DE 64].  Defendants, in response, state that they do not intend to

seek a comparative fault instruction relevant to Short's conduct or submit any evidence addressing Short's possible fault in the accident. [DE 81 at Page ID # 2704].

However, Defendants do seek to reference Short's speed at the time of the accident as part of expert Brent Slone's reconstruction of the accident. [*Id*.]. Of course, any reconstruction expert from Plaintiffs or Defendants must include the speed of the vehicles to detail the sequence of events that led to the accident. Such facts are critical here because Plaintiffs have sought pre-impact damages relevant to Short's actions prior to the collision and his passing. [*See* Memorandum Opinion & Order, DE 77 at Page ID# 2691-2694]. The Court agrees that the opinion of Slone referencing the speed of Short in his recreation of the accident is an admissible and relevant fact. To the extent Plaintiffs seek to exclude such information, the Court denies the request.

The Court, however, focuses on Slone's final opinion that does reflect upon Short's fault, something Defendants state they are not contesting. "Had Short reacted a little quicker while traveling in the left lane and swerved into the grass median he may have been able to avoid the accident." [DE 81 at Page ID# 2704]. Such an opinion is not necessary in recreating the accident sequence and suggests how Short could have avoided or minimized injury. Moreover, the opinion clearly reflects upon Short's fault. The Court will grant Plaintiffs' request as to this statement.

C.     **PARTIAL EXCLUSION OF DR. HEISCHMIDT**

Dr. Thomas Heischmidt is Walls' long-time primary care physician. Relevant to the current case, his office diagnosed Walls with bronchitis and prescribed an albuterol inhaler in the days prior to the accident. During his deposition, Dr. Heischmidt was asked a series of questions concerning the opinions of Dr. Philip Buescher, an expert retained by Defendants, and concerning an article relied upon by Dr. Buescher in support of his opinion. Plaintiffs seek to exclude these questions. This line of questioning, as presented at the deposition, is inadmissible.

There is no dispute that the questions at issue involve hearsay. Whether it is opinions held by Dr. Buescher or other scholarly articles, Defendants questioned Dr. Heischmidt about statements of another offered for the truth of the matter asserted in the statement. FED. R. EVID. 801. From there, the Court must determine if there is an exception that would permit such statements.

For the references to Dr. Buescher's opinions, Defendants do not present any hearsay exception that would permit such questioning of Dr. Heischmidt in terms of his agreement or disagreement with the other expert's opinions. The Court recognizes that Walls told Dr. Heischmidt about how he believed he may have lost consciousness after using his albuterol inhaler. The fact that Walls made these statements to Dr. Heischmidt, as his treating physician, is admissible. Dr. Heischmidt, based upon his training and experience, could even speak to his reaction to such a statement. Moreover, the Court understands that Dr. Buescher will opine that Walls lost consciousness as a direct result of a cough. Dr. Buescher will be able to opine about his support for such an opinion, including any reliance upon any medical literature. However, questioning Dr. Heischmidt about the truth of Dr. Buescher's opinions is, by its plainest definition, seeking the admission of a hearsay statement without any known exception.

For the references to an article about whether an albuterol inhaler could trigger a cough syncope, Federal Rule of Evidence 803(18) permits such hearsay testimony if: (a) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination and (b) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice. The problem here rests with the first element. Dr. Heischmidt is Walls' treating physician. He is Defendants' witness. Defendants, upon direct examination, asked the challenged questions. At no point has Dr. Heischmidt relied

upon the relevant scholarly articles.  Questioning Dr. Heischmidt on the statements contained in those articles is not admissible.

Defendants are prohibited generally from questioning Dr. Heischmidt if he agrees with the hearsay conclusions of Dr. Buescher or if he agrees with the hearsay statements contained in certain medical literature as presented in the deposition transcript.[1]  Dr. Heischmidt is permitted to testify about his treatment of Walls, any factual conversations he had with Walls, and/or any conclusion he reached in his professional opinion about the treatment of Walls.

**D.** **COUGH SYNCOPE AND WALLS' ALBUTEROL INHALER**

Defendants have consistently postured that the accident was caused by the unforeseeable circumstance of a cough syncope, either because of a cough following Walls' use of an albuterol inhaler or a spontaneous cough from his recent bronchitis diagnosis.  Plaintiffs include in their motion a request to "preclude any assertion by the Defense that Defendant John Walls experienced any syncope, or side effect, caused by the use of his albuterol inhaler." [DE 64 at Page ID # 2320].  Plaintiffs claim it "would be unsupported by any medical testimony or expert for the Defendants to assert Defendant John Walls was coughing due to the use of his albuterol inhaler. This notion has been bandied about by the Defense and by its retained expert, Dr. Buescher. Dr. Buescher provided one journal article regarding inhaler induced cough syncope. [. . .] The article itself is entirely unreliable and not representative of the medical information in the present case." [DE 64 at Page ID # 2320].

As best as the Court can discern, Plaintiffs seek to exclude any reference by Defendants not that a cough syncope was a possible cause of the lost of consciousness for Walls, but just that

---

[1] The Court is unsure if Dr. Heischmidt's video deposition is to be played at trial or if he is going to be called as a live witness.  If the former, the Court's opinion stands.  If the latter, the Court reserves the right to make a distinct ruling depending upon how the information is raised in questioning.

the albuterol inhaler caused such an event. Plaintiffs do not articulate what evidence is to be excluded. Plaintiffs complain that the article Dr. Buescher provided is "unreliable" but do not ask the Court to make any finding as to the article. Plaintiffs do not request that testimony or medical records regarding the inhaler be excluded.

Further, even if the Court could discern what Plaintiffs seek to exclude and how that to effectuate that request, the Court is not aware of any legal rationale for excluding such evidence. Plaintiffs' motion is devoid of any legal support or legal justification for the exclusion of such evidence. For example, Plaintiffs do not challenge Dr. Beuscher's qualifications or assert that his opinion is unreliable under the *Daubert* framework. Plaintiffs merely describe a study relied upon by Dr. Buescher as unreliable in a single sentence, but do not expressly or specifically seek exclusion of the article or Dr. Buescher's testimony. Plaintiffs do not suggest such evidence is irrelevant.

Instead, the Court construes Plaintiffs' sparse argument as an indirect attack on Defendants' overall cough syncope theory and supplemental to the arguments raised concerning portions of Dr. Heischmidt's testimony. Or, alternatively, this argument is a preview of how Plaintiffs intend to cross-examine Dr. Buescher at trial and the article supporting his opinion. Although Plaintiffs are certainly entitled to seek this line of cross-examination, the Court finds no evidentiary grounds to exclude such evidence at this juncture.

E.    POST-ACCIDENT TREATMENT OF WALLS

Plaintiffs also seek to exclude the introduction of the treatment of Walls following his accident. Specifically, Walls was treated for post-traumatic stress disorder, anxiety, and a brain injury. Defendants have set forth the details of the treatment Walls received related to those diagnoses. Plaintiffs argue such treatment is not relevant to the cause of the accident. Under these simple facts, the Court would likely agree.

6

Yet, Plaintiffs have repeatedly (and understandably) cited the fact that Walls told one story (that he fell asleep) to first responders but another story to Keller Trucking (he lost consciousness when he coughed).  If Plaintiffs are successful in admitting into evidence Walls' statements to first responders, then Defendants are permitted to admit testimony from another one of Walls' treating physicians, Dr. Terry Killian, that explains how his brain injury may have impacted his statements to first responders.[2]  In addition to Dr. Killian, Defendants also seek to introduce testimony from therapist Jennifer Mosier who treated Walls for PTSD "to explain his statements immediately after the accident and the effect of his brain injury and PTSD."  [DE 81 at Page ID# 2719].  Again, to the extent such testimony is relevant to Walls' statements to first responders, such evidence is admissible.  The testimony of both Dr. Killian and Ms. Mosier, however, should be limited to how Walls injuries impacted his memory and perception of the event.  Any testimony outside that scope is irrelevant and inadmissible.

Accordingly, Plaintiffs' motion in limine on this issue is denied.

F.      PARTIAL EXCLUSION OF J. STIDHAM

Federal law requires that all expert testimony meet certain requirements before the court finds it admissible.  *See*, *e.g.*, *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); FED. R. EVID. 702.  Trial judges are obligated to be gatekeepers, allowing only dependable expert testimony to reach the jury and excluding that which is dubious.  *Saint Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 666 F. Supp. 2d 820, 830 (N.D. Ohio 2009) (citing *Daubert*, 509 U.S. at 589). The party who proposes to introduce the expert has the burden of proving the testimony meets the Daubert elements by a

_____

[2] Defendants have indicated they intend to challenge the admission of such statements as hearsay.  [DE 81 at Page ID# 2719, n. 7].  If Defendants are successful in blocking such admission, then the testimony of Dr. Killian and Ms. Mosier is unnecessary.

preponderance of the evidence. *Asad v. Cont'l Airlines, Inc.*, 314 F. Supp. 2d 726, 731 (N.D. Ohio 2004) (citing *Pride v. BIC Corporation*, 218 F.3d 566, 578 (6th Cir. 2000)).

The Sixth Circuit, in *In re Scrap Metal Antitrust Litigation*, examined Rule 702 and found that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements: (1) the witness is qualified; (2) the testimony is relevant, meaning that it "will assist the trier of fact"; (3) and the testimony is reliable. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008) (citations omitted; internal quotation marks omitted). "The [trial court's] fundamental objective when considering the admissibility of expert testimony is 'to ensure the reliability and relevancy of that testimony.'" *Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (quoting *Kumho*, 526 U.S. at 152).

Defendants ask the Court to exclude any medical opinions by Plaintiffs' accident reconstructionist, Joey Stidham.[3]  Defendants do not contest Stidham's qualifications and resume. Nor do Defendants contest Stidham's reconstruction of the accident itself.  Rather, Defendants argue that Stidham is unqualified to render the expert opinion that Walls fell asleep while driving and that such an opinion will not assist the trier of fact as it is the *ipse dixit* of Stidham.  In response, Plaintiffs concede Stidham is not a medical expert.  Nevertheless, Plaintiffs argue Stidham will opine that Walls fell asleep as the cause of the accident based upon his review of Walls' medical history and other surrounding facts.  For the reasons explained below, the Court agrees with Defendants that this testimony must be excluded.

---

[3] Defendants also advance that Stidham should be prohibited from offering any testimony or opinions concerning the validity of Walls' Department of Transportation medical card. Plaintiffs agree and do not intend to offer any such testimony.  Consequently, the motion to exclude such testimony is granted.

Defendants' motion in limine focuses on his deposition testimony, not the specific opinions he will provide as listed in his expert report. Of course, Stidham will be confined to offering, on direct testimony, the opinions previously disclosed in his expert report. FED. R. CIV. P. 26(a)(2) and 37(c)(1). Thus, the Court will start with the expert report and then turn to Defendants' argument relevant to Stidham's testimony. Per the Court's review of that expert report, Stidham has provided nine separate "[o]pinions and [c]onclusions," which are set forth in his expert report. [DE 58, Exhibit A]. The Court's Memorandum Opinion and Order granting partial summary judgment [DE 77] dismissed certain claims that Stidham addresses in his nine "opinions and conclusions": negligence per se claims addressed in part of the second opinion and in the entirety of the fourth and fifth opinions. Thus, the Court concludes the part of the second opinion from Stidham regarding the Federal Motor Carrier Safety Regulations negligence per se claim and opinions four and five that address other claims previously dismissed by the Court are no longer relevant and therefore inadmissible. Those opinions and conclusions should be excluded in all regards. To the extent Stidham offers medical opinions, he does so in the above-excluded opinions (part of opinion two and the entirety of opinions four and five). In short, once the Court excludes those opinions—as it must—Stidham's remaining opinions do not touch upon the medical history or medical diagnosis of Walls.

The Court then turns back to the deposition testimony that is the focus of Defendants' motion. Stidham's disputed testimony was elicited through cross-examination of Defendants' counsel; the questions covered a broad range of topics addressed in his expert report as well as other issues raised by counsel, as discovery deposition often do. In other words, Stidham's deposition drifted far afield from his written opinions. The Court will attempt to provide some guidance to the parties as to the boundaries of Stidham's testimony. Stidham, by agreement of

Plaintiffs, Defendants, and Stidham himself, is not a medical expert. He is an accident reconstructionist. Stidham is qualified to detail his reconstruction of the accident and describe in detail his support for the sequence of the accident. Based upon his training and experience, Stidham could presumably make an opinion, as he does, that Walls appears unconscious per the dashcam video, that Walls loses control of the vehicle, and that such behavior is reckless in his training and experience. Stidham can cite to ample evidence from the dashcam; photographs from the accident scene; data retrieved from the vehicles; etc., in crafting all of these opinions. Stidham could even state, based upon his training and experience, that his review of the Walls' driving log and dashcam footage is consistent with a driver that was fatigued while operating a vehicle (*e.g.*, stopping to rest the morning of the accident, drifting moments before the accident). Stidham's conclusion that the cause of the accident was due to Walls' loss of control of his vehicle is certainly in the purview of an accident reconstructionist.

"But a glittery resume and an impressive career do not necessarily open the door to federal court." *Barnette v. Grizzly Processing, LLC*, Case No. 10-cv-77-ART, 2012 WL 293305, at *2 (E.D. Ky. Jan. 31, 2012). Stidham cannot affirmatively opine as to the medical cause of Walls' loss of control, whether it be that he fell asleep or suffered a cough syncope. Such an opinion is a medical opinion outside the realm of an accident reconstructionist. Stated another way, the Court cannot foresee that Stidham will testify about Walls' medical history, pre- or post-accident, in any regard. Instead, Walls' medical history (*e.g.*, diagnosis of chronic fatigue, bronchitis) indicating

the conclusion that Walls fell asleep as the cause of the accident [DE 55, at Page ID# 676-81] is, in fact, the purview of Dr. Frank Vannier.[4]  [DE 58, Exhibit C].

To the extent Plaintiffs seek to have Stidham go beyond his opinion that Walls was reckless in operating his vehicle and state that Walls fell asleep in the seconds prior to the collision is outside of an accident reconstructionist, Stidham is unqualified to do so, and his opinion would not assist the trier of fact.  Again, such testimony is the purview of Dr. Vannier, if at all.  A trial is "not the place for scientific guesswork, even of the inspired sort." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (quoting *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)).  "'[N]o matter how good 'experts' 'credentials' may be, they are 'not permitted to speculate.'" *Id*. (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000)).  Defendants' motion is granted.

G.     **EXCLUSION OF TESTIMONY FROM GRAVES-ALCORN.**

Defendants have sought to exclude Plaintiffs' expert, Sandra Graves-Alcorn, regarding alleged trauma suffered by Short's surviving family.  Because Graves-Alcorn recently passed away, Plaintiffs have withdrawn her as a witness.  Accordingly, the Court will deny Defendants' motion as moot.

H.     **EVIDENCE OF DEFENDANTS' FINANCIAL CONDITION**

Defendants seek to exclude any information concerning their ability to pay a judgment or generally as to their financial condition as such evidence is not relevant and is prejudicial.  The Court agrees that FED. R. EVID. 401 and 403 require the exclusion of this information because it is not relevant to the claims or defenses in this case and is highly prejudicial to Defendants.

---

[4] The Court concedes that both Stidham and Vannier may both testify about the Walls' behavior the morning of the accident (*e.g.*, stopping to rest the morning of the accident, drifting moments before the accident) or review the dashcam footage, but the Court has elucidated how that fact should be utilized relevant to the experts' respective opinions.

11

Furthermore, Plaintiffs did not respond to the motion, which is in and of itself justification for sustaining the motion. *See* LR 7.1 ("Failure to timely respond to a motion may be grounds for granting the motion."). Thus, the motion is granted.

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1.  Plaintiffs' Motion in Limine [DE 64] is **GRANTED IN PART, DENIED IN PART** as follows:

    a.  Plaintiffs' request that the there is no reference to Isaacs & Isaacs as a potential conflict during voir dire is **DENIED**.  As to references to any marketing or advertising related to Isaacs & Isaacs or Daryl Isaacs, Plaintiffs' motion is **GRANTED**.

    b.  Plaintiffs' request that Defendants not reference Short's speed relevant to the accident is **DENIED**.  However, to the extent Defendants' expert seeks to introduce facts suggesting that Short could have avoided the accident if he was traveling at a lower speed or was otherwise at fault, Plaintiffs' request is **GRANTED**.

    c.  Plaintiffs' request that Defendants be precluded from referencing that a possible cough syncope was caused by the use of an albuterol inhaler is **DENIED**.

    d.  Plaintiffs' request seeking the exclusion of Walls' post-accident treatment is **DENIED**.  To the extent Plaintiffs seek to introduce Walls' statements to first responders, Defendants can seek to introduce evidence explaining how his injuries impacted his memory as detailed in his post-accident treatment.

2.  Plaintiffs' Motion in Limine [DE 65] is **GRANTED**.

3.      Defendants' Motion in Limine [DE 67] is **GRANTED IN PART, DENIED IN PART** as follows:

    a.  Defendants' request that Joey Stidham be precluded from opining that Walls fell asleep as a cause of the accident is **GRANTED**.

    b.  Defendants' request that Joey Stidham be precluded from testifying about Walls' Department of Transportation medical card is **GRANTED**.

    c.  Defendants' request to exclude the testimony of Sandra Graves-Alcorn is **DENIED AS MOOT**.

    d.  Defendants' request to exclude any evidence of their ability to pay a judgment or their general financial condition is **GRANTED**.

Entered this 22nd day of October, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge

13